O
JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENELOPE BERGMAN,<br><br>                Plaintiffs,<br>    v.<br><br>FIDELITY NATIONAL FINANCIAL, INC.,<br><br>                Defendants. | Case No. 2:12-cv-05994-ODW(MANx)<br><br>**ORDER GRANTING CONVERTED MOTION FOR SUMMARY JUDGMENT [35, 56]** |

## I. INTRODUCTION

Plaintiff Penelope Bergman brings claims against Fidelity National Financial for violation of the Real Estate Settlement Procedures Act ("RESPA"). Fidelity moved to dismiss Bergman's First Amended Complaint, contending in part that Bergman's loan was for business or commercial purposes and therefore did not fall within RESPA's ambit. The Court converted Fidelity's motion to dismiss to a motion for summary judgment on this threshold issue and now **GRANTS** the converted motion for summary judgment.[1]

///

///

---

[1] Having carefully considered the papers filed in support of and in opposition to Fidelity's motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15.

## II. FACTUAL BACKGROUND

In 2008, Penelope Bergman (then Penelope Park[2]) purchased a triplex at 1712, 1714, and 1716 South Crescent Heights Boulevard in Los Angeles, California. (Bergman Decl. ¶ 1; ECF No. 36-2.) To finance the $645,000 purchase price, Bergman executed a deed of trust in the amount of the purchase price. (ECF No. 36-2, at 16.) This deed of trust included a 1–4 Family Rider that (among other things) assigned rents to the lender and deleted the occupancy requirement contained in the deed of trust. (*Id.*) Bergman testified that she purchased the triplex "to provide a place for myself and my family to live and retire." (Bergman Decl. ¶ 1.)

On June 8, 2011, Bergman obtained a $626,250 refinance loan to lower the interest rate and monthly mortgage payments on her triplex. (*Id.* ¶ 2; ECF No. 36-3.) According to Bergman, "The refinance was solely to pay off the balance on [her] purchase money loan . . . , and [she] did not receive any cash proceeds from the refinance." (Bergman Decl. ¶ 2.) The deed of trust for the refinance loan contained the same 1–4 Family Rider found in Bergman's original deed of trust (ECF No. 36-3, at 18), and various loan documents identify the property type as "Three Family" and property usage as "Primary Residence." (ECF No. 51, Exs. 3–4.)

Bergman contends that at the time she refinanced the triplex, the unit at 1716 South Crescent Heights was her primary residence (which she shared with her sister), and she expected to and did occupy that unit for more than 14 days in the coming year. (Bergman Decl. ¶ 3.) Yet, public records list 17*14* South Crescent Heights as Bergman's address only from November 2009 to March 2010; from July 2010 (a year before closing on the refinance loan) to present her address is listed as 3879 Lyceum Avenue, which was her then-fiancé's (now husband) address. (Gleason Decl. Ex. C.)

Since 2002, Bergman has worked primarily as a practicing attorney. (Bergman Decl. ¶ 4.) As a founding member of her current firm, Bergman & Gutierrez LLP, Bergman's practice focuses "on business and real estate litigation and transactional

---

[2] Bergman married Joseph Bergman on November 12, 2011. (Gleason Decl. Exs. A–B.)

matters." (Gleason Decl. Ex. D, at 15.) In addition to her work as an attorney, Bergman has always personally managed her triplex through 1712 Crescent, LLC, which she formed upon her acquisition of the triplex. (Bergman Decl. ¶ 5.) Bergman is the sole member of and the statutory agent for this limited liability company. (ECF No. 36-4, at 71–72.) According to Bergman, the triplex has never produced any positive net income, as the rent she receives from the two rented units is less than her total out-of-pocket costs associated with maintaining the property. (Bergman Decl. ¶ 6.)

Against this backdrop, the Court must apply the summary-judgment standard to ascertain whether Bergman's 2011 refinance loan—the only loan transaction at issue in this case—is more accurately characterized as a personal loan (which would be subject to RESPA) or a business or commercial loan (which would not be subject to RESPA).

### III. SUMMARY-JUDGMENT STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV.  DISCUSSION

Bergman's First Amended Class Action Complaint asserts a single claim for violation of RESPA, 12 U.S.C. § 2607.  But RESPA exempts from its coverage any credit transaction involving extensions of credit primarily for business or commercial purposes.  12 U.S.C. § 2606(a)(1); *see also  Daniels v. SCME Mortg. Bankers, Inc.*, 680 F. Supp. 2d 1126, 1129 (C.D. Cal. 2010) (same).  Thus, if the Court determines that Bergman's 2011 refinance loan was primarily for business or commercial purposes, as defined under RESPA's implementing regulations, then the Court must dismiss Bergman's action in its entirety.

Regulation X, RESPA's implementing regulation, exempts extensions of credit primarily for business or commercial purposes, "as defined by Regulation Z, 12 CFR 226.3(a)(1)."  12 C.F.R. § 3500.5.  Regulation Z likewise exempts "[a]n extension of credit primarily for a business, commercial or agricultural purpose."  12 C.F.R. § 226.3.  The determination "[w]hether an investment loan is for a personal or a business purpose requires a case by case analysis" based on the guidelines established in Regulation Z.  *Thorns v. Sundance Props.*, 726 F.2d 1417, 1419 (9th Cir. 1984).

Regulation Z's Official Commentary explains that three types of credit transactions for rental property are properly characterized as "for business purposes": (1) credit extended to acquire, improve, or maintain any non-owner-occupied rental property; (2) credit extended to *acquire* owner-occupied rental property with two or more units; and (3) credit extended to *maintain or improve* owner-occupied rental property more than four units, but only where certain additional factors further

/ / /

indicate a business purpose. 12 C.F.R. Pt. 226, Supp. I, § 226.3(a)(4)–(5). These additional factors are:

    A.    The relationship of the borrower's primary occupation to the acquisition. The more closely related, the more likely it is to be business purpose.

    B.    The degree to which the borrower will personally manage the acquisition. The more personal involvement there is, the more likely it is to be business purpose.

    C.    The ratio of income from the acquisition to the total income of the borrower. The higher the ratio, the more likely it is to be business purpose.

    D.    The size of the transaction. The larger the transaction, the more likely it is to be business purpose.

    E.    The borrower's statement of purpose for the loan.

12 C.F.R. Pt. 226, Supp. I, § 226.3(a)(3)(A)–(E).

Bergman testifies that she lived in the 1716 South Crescent unit for more than 14 days in the year she refinanced the property, so Bergman's property falls within the definition of owner-occupied property. *See* 12 C.F.R. Pt. 226, Supp. I, § 226.3(a)(4) (" If the owner expects to occupy the property for more than 14 days during the coming year, the property cannot be considered non-owner-occupied . . . ."). So, because Bergman's property contains three units, the Court may find the refinance loan was primarily for business purposes if the loan was used to "acquire" the triplex or if the loan was obtained to "maintain or improve" the triplex and the five factors laid out above weigh in favor of finding a business purpose.

Unsurprisingly, the parties dispute whether Bergman's 2011 loan, as a refinance loan, is more accurately described as a loan to acquire the triplex or to maintain or improve it. Bergman contends that the "2011 loan was not an acquisition loan . . . ; it was a refinance to reduce the cost of the debt to the property." (Plf.'s Suppl. Br. 2.)

Fidelity National, on the other hand, asserts that it's "indisputable that her loan is an 'acquisition' loan because Plaintiff refinanced the loan she used to acquire the property." (Def.'s Suppl. Br. 3.) Unfortunately, neither party cites any authority in support of its position, and the Court has found none in support of either. But RESPA unquestionably applies to refinance loans, and Regulation Z suggests no third alternative. The Court must therefore endeavor to characterize Bergman's refinance loan as one or the other.

The Court finds Fidelity National's position inherently more reasonable under the circumstances of this case. While it is true that Bergman's refinance loan was not used to acquire the triplex in the first instance, Bergman unequivocally testifies that the "refinance was *solely* to pay off the balance on [her] purchase money loan." (Bergman Decl. ¶ 2 (emphasis added).) This cuts both in favor of characterizing the refinance as an acquisition loan and against characterization of the loan as one for maintenance. Bergman does not contend that she refinanced the triplex in order to make repairs or otherwise maintain the property; instead, she asserts only that she intended to lower her monthly payments to make her acquisition loan more affordable. This leads the Court to view Bergman's loan more as one tied to acquisition than to one tied to maintenance.[3] The Court therefore finds that the 2011 refinance loan is more properly characterized as an extension of credit used to acquire owner-occupied rental property with more than two units, which renders the loan one primarily for business purposes.

But even if the Court could find that Bergman's 2011 refinance loan was one for maintenance and not acquisition, consideration of the relevant factors direct the conclusion that the loan was still primarily for business purposes. The first factor

---

[3] The Court is not oblivious to characterization problems regarding refinance loans taken out for other purposes may present in this context. For example, had Bergman testified that she refinanced her triplex in order to have additional money to put toward a completely unrelated purposes, the Court would be hard pressed to find that the refinance loan could be construed as *either* one for acquisition *or* for maintenance of the triplex. Nevertheless, the Court is not confronted with this quandary here and declines to indulge hypothetical scenarios not raised by this action.

1  looks at the borrower's primary occupation in relationship to the acquisition; the more
2  closely related they are, the more likely the loan is a business-purpose loan.  While
3  Bergman's primary occupation is practicing as an attorney, Bergman focuses on real-
4  estate transactions and litigation in this capacity.  As Fidelity National correctly notes,
5  Bergman's "professional focus on real estate matters dovetails precisely with (a) her
6  creating and operating an LLC—named after the property—for 'Real Estate Rentals'
7  and (b) her owning the rental property." (Def.'s Suppl. Br. 4.)  The Court therefore
8  finds that this factor weighs in favor of finding a business purpose.

9  The second factor assesses the degree to which Bergman will personally
10 manage her rental property.  Bergman testifies that she has "always personally
11 managed [her] triplex" and that she "organized and ha[s] used an entity called 1712
12 Crescent, LLC for the purpose of protecting [her] property and [her]self from
13 individual liability in managing the property." (Bergman Decl. ¶ 5.)  Moreover,
14 Bergman is the sole member of the LLC and its statutory agent. (ECF No. 36-4, at
15 71–72.)  This unquestionably favors a business-purpose characterization.

16 The third factor—ratio of income from the acquisition to the total income of the
17 borrower—weighs in Bergman's favor, as the triplex "has never produced any
18 positive net income." (Bergman Decl. ¶ 6.)  The fourth factor falls between the
19 parties, as the transaction size was $626,250.  While Fidelity National contends this
20 figure "should not be deemed to be small by any measure," neither party introduces
21 evidence of comparable properties or transactions.  The Court therefore has no basis in
22 the record to determine whether $626,250 is so disproportionately higher than an
23 average personal loan that it suggests a business purpose.

24 Finally, the fifth factor looks to the borrower's statement of purpose for the
25 loan.  Bergman insists that the purpose of the 2011 loan was to refinance her original
26 mortgage, which was obtained so that she could have a place for herself and her
27 family to live and retire in.  This factor weighs in Bergman's favor, as it indicates a
28 more personal purpose for the loan.

Thus, on balance, consideration of the Official Commentary's five factors favors neither party. But the Court would be remiss if it did not consider other relevant factors at play here. The Court finds it particularly relevant that both the 2008 and the 2011 deeds of trust contained a 1–4 Family Rider, which (among other things) waived Bergman's occupancy requirement; assigned the lender all leases, rents, and security deposits; and required Bergman to insure against rent loss. (ECF No. 36-2, at 16; ECF No. 36-3, at 18.) In addition, public records reveal that Bergman's address from before the refinance to the present has been another (her husband's) address. These facts, combined with Bergman's real-estate focus in her legal occupation and sole management of the property through a limited liability company, strongly suggest a business flavor to Bergman's loan.

Finally, and somewhat tellingly, the only evidence Bergman submits in opposition to the converted motion for summary judgment going to the personal nature of the loan is a short, self-serving declaration unsupported by any documentary evidence. This borders on "evidence that is merely colorable or not significantly probative," which "does not present a genuine issue of material fact." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). Indeed, evidence of the personal nature of Bergman's loan, if any exists, should be uniquely available to Bergman, especially at this early stage of litigation. Nevertheless, Bergman failed to produce any such evidence.

In sum, the Court finds RESPA does not apply to Bergman's transaction under either approach. Bergman's sole claim for violation of RESPA must therefore fail. The Court therefore **GRANTS** First Fidelity's converted motion for summary judgment.

## V. CONCLUSION

Because the Court finds that Bergman's 2011 refinance transaction was primarily for business purposes, the Court **GRANTS** First Fidelity's converted motion

/ / /

for summary judgment and **DISMISSES** this action in its entirety.  The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

December 3, 2012

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**